FILED
2019 May-28  PM 09:06
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.,* STARR CULPEPPER, O. TAMEKA WREN, | ) ) ) | |
| Relators/Plaintiffs, | ) ) | Case No.: 2:18-cv-00567-RDP |
| v. | ) ) | |
| BIRMINGHAM JEFFERSON COUNTY TRANSIT AUTHORITY (BJCTA); STRADA PROFESSIONAL SERVICES, LLC.; WENDEL ARCHITECTURE, P.C.; SKYE CONNECT, INC.; EDMOND V. WATTERS; ALICE GORDON; BARBARA MURDOCK; and PATRICK SELLERS, | ) ) ) ) ) ) ) ) | ORAL ARGUMENT REQUESTED |
| Defendants. | ) ) | |

**BRIEF IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF-RELATORS' FIRST
AMENDED *QUI TAM* COMPLAINT
BY DEFENDANTS ALICE GORDON
AND SKYE CONNECT, INC.**

I.    **INTRODUCTION**

There are few legal and political matters as serious as corruption in handling public

funds.  For this reason the False Claims Act, 31 U.S.C. § 3729 *et al.* ("FCA") aka "Lincoln's

Law," was passed in 1863.[1]  This powerful statute allows an individual to make a claim on behalf

of the United States Government for presenting false claims for payment of money.  Because it

was designed to be and is a powerful tool for curbing corruption, the courts have invoked careful

discretion in allowing its use.  This is as it should be because of the predictable and potentially

---

[1] *Hubbard v. United States,* 514 U.S. 704 (1995). The history of this type of *qui tam* recovery goes back to the time of King Edward II who was interested in curbing the practice of government workers moonlighting as wine merchants. *See generally* https://en.wikipedia.org/wiki/False_Claims_Act#History.

irreparable damages to business reputations, as well as expenditure of fees and costs for defense. The Eleventh Circuit Court of Appeals requires Relator-Plaintiffs to state the basis of their claims with the level of specificity required under Rule 9(b), Fed. R. Civ. P. as a form of gate-keeping with regard to the power and potential abuse of discovery.  In this context, "these Defendants" Alice Gordon ("Gordon") and Skye Connect, Inc. ("Skye") filed on May 9, 2019 a Motion to Dismiss (Doc 26), which was declared Moot by Order (Doc 29) and have now filed a this Motion to Dismiss the First Amended Complaint and all claims against them, and submit this Brief in support thereto.

II.     **THE LAW INVOKED AND CLAIMS ASSERTED**

    **A.**     Plaintiffs have invoked 31 U.S.C. §§ 3729(a)(1)(A), (B), (C) and (G) with respect to claims against Alice Gordon ("Gordon"), and Skye Connect, Inc. ("Skye Connect"), a corporation for which Gordon is CEO. Those provisions read as follows:

> **§3729. False claims**
> (a) Liability for Certain Acts.—
>
> (1) In general.—Subject to paragraph (2), any person who—
>    (A)   knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
>    (B)  knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
>    (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);
>
>              *                    *                   *
>
>    (G)     knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, . . .

    B.     **APPLICABLE LAW AT MOTION TO DISMISS STAGE**

1.   <u>The Complaint Must Meet Rule 8(a)(2) Requirement
to State a Plausible Claim</u>

In an evaluation of a Rule 12(b)(6), Fed. R. Civ. P. Motion,[2] the allegations in the Complaint are accepted as true and construed in the light most favorable to the plaintiff. *Marsteller v. Tilton,* 880 F. 3d 1302, 1310 (11th Cir. 2018) citing and quoting *Tinson v. Sampson,* 518 F. 3d 870, 872 (11th Cir. 2008)(*per curiam*).

Rule 8(a)(2) requires the pleader to set out "a short and plain statement of the claim showing that the pleader is entitled to relief."  The United States Supreme Court in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) held that the pleading duty ". . . requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do."[3]  The rule is that the factual allegations must provide "enough facts to state a claim to relief that is plausible on its face." 550 U. S. at 570, 127 S. Ct. 1974.  The Court addressed the issue again in *Ashcroft v. Iqbal,*  556 U.S. 662, 663, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) and citing *Twombley* said: "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."

In expounding upon the quality of the allegations the pleader must provide, with an implicit warning of the district court's gate keeping function, the Court held: "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

---

[2] Gordon and Skye Connect may not have clearly referred to their Motion as a 12(b)(6) Motion, but it is.
[3] The Court cited to *Papasan v. Allain,* 478 U.S. 265, 286 (1986) which held on motions to dismiss courts "are not bound to accept as true a legal conclusion couched as a factual allegation."

conclusions." *Iqbal,* 556 U.S. at 678-79. This requirement must also be met in an FCA Complaint. *See Universal Health Servs., Inc. v. U.S. & Mass. ex rel. Escoba*r, ____U.S. ____, 136 S. Ct. 1989, n.6, 195 L. Ed. 2d 348 (2016) announcing ". . . False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality."

2.     The Factual Allegations of an FCA Complaint Must
Meet the Particularity Requirements of Rule 9(b)[4]

Rule 9(b), Fed. R. Civ. P. states: "(b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  This Rule supplements but does not replace Rule 8 in creating a heightened pleading standard. *See Urquilla-Diaz v. Kaplan Univ.,* 780 F.3d 1039, 1051 (11th Cir., 2015).

Under § 3729(a)(1)(A) or (C), the Complaint must allege an actual and knowingly false claim was presented for payment to the government, and allege the particulars of the offense, specifically, the " 'who, what, when, where, and how' of the submissions to the government." *Kaplan Univ.,* 780 F. 3d at 1052 citing and quoting *Corsello v. Lincare Inc.*, 428 F. 3d 1008, 1014 (11th Cir. 2005) *accord Hopper v. Solvay Pharmaceuticals, Inc.,* 588 F.3d 1318, 1327 (11th Cir., 2009) *accord United States ex rel. Seal v. Lockheed Martin Corp.,* 429 Fed. App'x 818, 820 (11th Cir. 2011)*; citing United States ex rel. Sanchez v. Lymphatx, Inc.,* 596 F.3d 1300, 1302 (11th Cir. 2010)*; see also United States ex rel. Clausen v. Lab. Corp. Of Am.,* 290 F.3d 1301, 1310 (11th Cir. 2002)*; United States ex rel. Shurick v. Boeing Company,* 330 Fed. App'x 781, 783 (11th Cir. 2009)("the complaint must allege facts as to time, place and

---

[4] The Eleventh Circuit Court of Appeals held that Rule 9(b)'s heightened pleading requirement applies in FCA cases. *United States ex rel. Clausen v. Lab. Corp. of Am*., 290 F.3d 1301, 1308-10 (11th Cir. 2002).

4

substance of the defendants's (sic) alleged fraud, [and] the details of the defendants['] allegedly fraudulent acts, when they occurred, and who engaged in them.")

Under any part of Section of §3729, the complaint must allege specific facts showing scienter and that any falsehood was material to a false statement or payment to defendants. *Escobar*, 136 S. Ct. at 2002. *See Mastej v. Health Management Associates, Inc.,* 591 Fed. App'x 693, No. 13-11859 *40 (11th Cir. 2014) *cert denied*, No. 14-1154, 2015 WL 1289587 (U.S. Jun. 1, 2015). Reliability of the allegations in an FCA complaint is generally shown by providing details of the offending actions, and showing the relator was in a position to know of the violations. *See Chase,* No. 16-16670 at *9 citing *Hopper*, 588 F. 3d at 1326; *United States ex rel. Atkins v. McInteer,* 470 F. 3d 1350, 1358 (11th Cir. 2006) *and U.S. ex rel. Walker v. R&F Props. of Salt Lake City, Inc.,*433 F. 3d 1349, 1360 (11th Cir. 2005).

While scienter is required and may be generally pleaded, materiality must be sufficiently particularized so as to put defendants on notice as to what actions are claimed to be violative of the FCA. The key to a determination of whether the factual allegations meet the minimum pleading standard is if there is an "indicia of reliability." *United States ex rel. Chase v. HPC Healthcare, Inc*. No. 16-16670 * 9 (11th Cir., 2018) citing *Clausen*, 290 F. 3d 1311. The complaint should be dismissed if the allegations of fact do not demonstrate the threshold level of reliability, materiality and presentation of a false claim to the government. *Id.* "This Court has explained that a relator may not simply 'portray[] the scheme and then summarily conclude[] that the defendants submitted false claims to the government for reimbursement.'" *Chase*, No. 16-16670 at * 11 quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006).

The definition of materiality in the context of a FCA complaint has been pointedly defined by the U.S. Supreme Court as follows:

> We need not decide whether § 3729(a)(1)(A)'s materiality requirement is governed by § 3729(b)(4)[5] or derived directly from the common law. Under any understanding of the concept, materiality "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003) (Williston). In tort law, for instance, a "matter is material" in only two circumstances: (1) "[if] a reasonable man would attach importance to [it] in determining his choice of action in the transaction"; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter "in determining his choice of action," even though a reasonable person would not. Restatement (Second) of Torts § 538, at 80. Materiality in contract law is substantially similar. See Restatement (Second) of Contracts § 162(2), and Comment c, pp. 439, 441 (1979) ("[A] misrepresentation is material" only if it would "likely ... induce a reasonable person to manifest his assent," or the defendant "knows that for some special reason [the representation] is likely to induce the particular recipient to manifest his assent" to the transaction)

*Escobar* 136 S. Ct. at 1989.   Not just any allegation will suffice to meet the requirements of Rule 9(b) as the court in *Atkins,* 470 F. 3d at 1357 made clear saying: "We cannot make assumptions about a False Claims Act defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)'s requirement of specificity or ignoring that the 'true essence of the fraud' of a False Claims Act action involves an actual claim for payment and not just a preparatory scheme."   A relator should not be able to open the powerful doors of discovery under the FCA without disclosing a reliable factual background, because "[w]hen a plaintiff does not specifically plead the minimum elements of [his] allegation, it enables [him] to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of

---

[5] § 3729(b)(4) defines "material" to mean " having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

its core underpinnings, and at worst, ... baseless allegations used to extract settlements. *See id* at 1359, citing *Clausen*, 290 F.3d at 1314 n. 24.

### 3.   Pleading Conspiracy Under the FCA

Conspiracy to commit a violation of the FCA cannot be loosely interpreted on a motion to dismiss, there are specific elements of the underlying offenses that must be pleaded and proven. *See Krulewitch v. United States,* 336 U.S. 440, 457 (1949), Jackson, J. concurring ("No statute authorizes federal judges to imply, presume or construct a conspiracy except as one may be found from evidence.") Section 3729(a)(1)(C) provides a cause of action against any person who "conspires to commit a violation of subparagraph (A), (B), (C), (D), (E), (F) or (G)." The pleading requirements under Rules 8(a)(2) and 9(b) are applicable to a conspiracy claim which only states a claim when alleging: "(1) an unlawful agreement between defendants to commit a violation of § 3729(a)(1); (2) an act performed in furtherance of the conspiracy; and (3) that the United States suffered damages as a result. *See Corsello*, 428 F.3d at 1014 (interpreting the pre-amendment version of the statute); 31 U.S.C. § 3729(a)(1)(C)." *Chase*, No. 16-16670 at * 13.[6]   The district court dismissed the conspiracy complaint and the circuit court affirmed in *Chase,* where the plaintiff merely alleged "Defendants knowingly conspired with each other." *Id.*

### 4.   Pleading False Certification of Compliance Under the FCA

This potential violation applies where a contractor makes specific misrepresentations about the goods or services provided, or failing to disclose it did not comply with a requirement,

---

[6] The court noted it is not clear whether the damages element of the conspiracy remains after the 2009 amendments. *Id.*, n.4. Of course, if there is no damage to the government, one has to wonder about the point of it all.

which omission makes the submission misleading, when presenting a claim for payment.  The claim generally arises from the submission by a contractor who has a contract requirement to follow statutes or regulations applicable to the funding source.  In *Escobar,* the Court found "Universal Health misrepresented its compliance with mental health facility requirements that are so central to the provision of mental health counseling that the Medicaid program would not have paid these claims had it known of these violations." *Escobar*, 136 S. Ct. at 2004.

The holding in *Escobar* in 2016 defined the violation under the FCA saying: "Accordingly, we hold that the implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.* at 2001.  In adopting this theory of recovery, the Court also commented upon the requirements of scienter and materiality that must be present in the complaint's factual allegations – "misrepresentation must be material to the other party's course of conduct,"[7] and the scienter requirement does not have to be dependent upon an expressed condition of payment, or regulation, because a defendant may have actual knowledge that informs materiality.[8]

While the implied false certification theory can be invoked without the existence of an expressed condition of payment, the certification must be <u>material</u>, but "statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment." *Escobar*, 136 S. Ct. at 1994.  The Court explained if the Government arbitrarily

---

[7] 136 S. Ct. at 2001.

[8] 136 S. Ct. at 2001 providing the example that "actual knowledge" required under § 3729(b)(10(A) at bottom can arise from common sense, as in a case where the government is sold guns that do not shoot.

designated "thousands of complex statutory and regulatory provisions" as conditions for payment, defendants would not have any way of knowing which ones the Government relied upon in any given certification for payment. *Id.* at 2002. The Court moved away from a rigid, even a "gotcha" type basis for a claim where immaterial regulations may be violated, and made clear there is liability for providing misleading information, or omitting information that makes the certification misleading in a material way. *Id.* at 2002-03. To this end, the Court repeated its admonition the FCA is not "an all purpose antifraud statute,"[9] "or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 136 S. Ct. at 2003.

The Eleventh Circuit Court of Appeals addressed the quality of the factual allegations needed to defeat a motion to dismiss under the FCA in *Marsteller,* 880 F. 3d at 1313. The case was remanded so the district court could consider the mandates of *Escobar,* in particular (1) whether non-compliance was "minor or insubstantial," or (2) amounted to "garden-variety breaches of contract or regulatory violations," or (3) were violations the Government was previously aware of and had nevertheless paid claims. *Id.* quoting *Escobar*, 136 S. Ct. at 2002-03. If any of these facts were developed, the non-compliance would not be regarded as material. *See Escobar,* 136 S. Ct. at 2003-04; *Urquilla-Diaz v. Kaplan Univ.,* 780 F. 3d 1039, 1052 (11th Cir. 2015)(false certification requisite to receipt of government benefit needed to state a claim).

With this legal background, we now turn to an analysis of the Complaint, which demonstrates why the Second Motion to Dismiss should be granted.

C.    **THE CLAIMS ASSERTED**

1.    Allegations of Fact

---

[9] *Escobar*, 136 S. Ct. 2003 quoting *Allison Engine Co. v. United States ex rel. Sanders,* 553 U. S. 662,672 (2008).

a.     The Complaint (Doc 1, pp. 21-2) Paragraphs 133-139 has the heading: "

<u>Defendants Alice Gordon[10] and Skye Connect Provided Services to BJCTA and Charged More</u>

<u>than Best Value or Fair Market Prices for the Services.</u>"  The allegations covered by these

paragraphs assert two wrongs: (i) Gordon and Skye Connect "began contracting with

Defendants" in 2013 to plan a retreat and in 2018 Gordon and Skye Connect were paid $34,000

for the retreat which "was far above the market rate or best value BJCTA would have paid if it

had engaged in competitive bidding." Doc 1, p. 22 ¶ 136; (ii) In June 2017, Defendants Gordon

and Skye Connect were being paid $75,000.00 for consulting services pursuant to a contract and

Defendant Murdock [Executive Director of BJCTA at the time] increased the contract to

$150,000.00 and the additional $75,000.00 was paid without any additional services "for no

reasonable or logical legitimate business reasons." Doc 1, pp. 21-2 ¶¶ 137-139.  No presentment

of a false claim was alleged, no wrongdoing on the part of either of these Defendants was

alleged, as the gravamen of the claim rests with an allegation that Defendants Murdock and

BJCTA failed to properly administer funds of unspecified origin.

The factual allegations in (i) claim failures of the BJCTA to appropriately administer

contracts.  In particular, the identified  failures were: (a) no competitive bidding for the Skye

contract for services to perform and conduct a retreat, and, (b) payment by BJCTA of more than

"fair value." There is no wrongdoing attributed to Gordon or Skye.   The court in *Mastej,* No. 13-

11859 at *30 quoted *Hopper*, 588 F. 3d at 1318 saying that "[i]mproper practices standing alone

are insufficient to state a claim under either § 3729(a)(1) or (a)(2) absent allegations that a

specified fraudulent claim was in fact submitted to the government."  Such a claim is stunningly

absent.

---

[10] Paragraph 141, p. 22 of the Complaint (Doc 1) alleges Alice Gordon was a "non-BJCTA employee and principal of Sky (sic) Connect, a BJCTA contractor." Defendants agree with this description of Gordon and contend it is a legitimate basis for her dismissal in this case.

Likewise, in (ii) the factual allegations merely recite Gordon and Skye Connect received an increase in the contract amount, and do not allege wrongdoing, but merely claim there was not a justifiable reason for the increase.  This allegation refers to the garden-variety contract case and does not effectively invoke the FCA. This assertion is another condemnation of the BJCTA's operations. There is no allegation that Gordon or Skye Connect knowingly presented a false claim for payment.  Indeed, the allegation does not claim Gordon or Skye Connect presented any invoice for payment.   The assertions lack any "indicia of reliability," including how either Relator had knowledge of, or responsibility for these actions or inactions by the BJCTA. *See Chase,* No. 16-16670 at *9 citing *Hopper*, 588 F. 3d at 1326.  There is no allegation that a false record was created or used by Gordon or Skye Connect.  For example, conspicuous by its absence, is any allegation that Gordon or Skye Connect submitted a proposal, or created a report, record, or invoice that was false or misleading.

b.      The allegations in the Complaint (Doc 1, pp. 22-3) at ¶¶ 140-147 were placed under the heading which reads: "<u>Defendants Murdock, Gordon and Skye Connect Conspired to Receive Federal Funds and BJCTA intentionally failed to exercise proper oversight.</u>"[11] Doc 1, p. 22.  Building on the allegations about an increase in a contract total to Skye Connect of $75,000.00, first mentioned in ¶¶ 137-138, Relator Wren apparently investigated the increase and was not satisfied with the information she was given, as described in ¶¶ 140-142.  By her own admission, she does not have the requisite knowledge to provide reliability to the allegations in the Complaint (Doc 1).

The essence of the claim in ¶¶ 143-147 is that, shortly before June 2017, when Gordon and Skye Connect were granted a $75,000 increase in a contract for services, Gordon, a non-BJCTA employee, had performed an evaluation on the job performance of Defendant Murdock,

---

[11] Despite the title, there is no allegation of a conspiracy in ¶¶ 138-145.

and the BJCTA Board and Murdock then awarded Murdock an increase in salary of $40,000.00. Presumably, Relator Wren would know about the basis for the increase in salary – "largely due to a favorable performance evaluation" (Doc 1, p. 23, ¶ 143) – because she served on the Board of Directors at that time.[12]   There is no allegation as to why BJCTA would agree to the increased salary for Murdock, if it was not warranted in the circumstances, whatever they may be.

The core allegation, focused on a suggestion of wrongdoing in this section of the Complaint, is at Doc 1, p. 23, ¶ 144, which reads: "Upon information and belief, Defendants BJCTA and Murdock awarded Gordon and Skye Connect no bid \ sole source contracts and increased the amount of at least one of these contracts in exchange for Defendants Gordon and Skye Connect directly assisting Murdock in obtaining an increase in salary from the BJCTA." This conclusory statement, admittedly not based upon personal knowledge, is untethered from any operative facts, except for the proximity of two events – the evaluation on Murdock and the increase of $ 75,000.00 for Gordon and Skye Connect.

The allegation presumes a connection no facts can associate.  There is no allegation: (i) the performance evaluation was false, or incorrect; or, (ii) the increase of $75,000.00 was obtained by Gordon and Skye Connect on a false invoice or record, or a misleading omission, including any reference to an incorrect evaluation; or, (iii) of an agreement to conspire in submitting the evaluation on Murdock; or, (iv) of the job positions Murdock held before and after the alleged increase in salary; or, (v) how Gordon, a non-BJCTA employee, came to

---

[12] The only allegation as to Wren's work for the BJCTA is in Doc 1, p. 4, ¶ 15, alleging she was the Chair of the Board of Directors from October 2017 through January 2018.  There is no information in the Complaint as to how she would have information about matters that occurred previous to or after her service as Chair, except, as it is alleged she questioned and inquired. Doc 1, p. 22, ¶¶ 138, 140.  This employment background is not legally sufficient to support an FCA Complaint.

provide the Murdock evaluation; or, (vi) what damage, if any, was caused to the federal government by these Defendants.

Once again, the allegations resonate with a claim of incompetence, or dereliction of duty with respect to the administration of money from federal grants by the BJCTA.  If the BJCTA spent money in violation of regulatory provisions, it is not alleged, and the FCA is not designed to address mere incompetence.  Nowhere in this Count or the factual allegations of the Complaint (Doc 1), is there an alleged fact that Gordon or Skye Connect made an agreement of some kind with the BJCTA or Murdock to skirt federal regulations to which they were bound, or to knowingly accept funds believed to have been illegally obtained, or so poorly managed the payment was illegal.  Even if such allegations had been made, they would not have arisen to the level of a violation of the FCA for lack of a submission of a false claim.  In addition, there is no allegation of an agreement, or overt act in furtherance of any conspiracy to violate a federal regulation or statute.  These deficient allegations cannot be cured with an amendment to the Complaint (Doc 1) that seeks to expand the scope of what the Relators already make plain they do not know.

It is against these "factual" background allegations that the Relators pressed four claims against Gordon and Skye Connect, and an analysis of those claims, in light of the factual allegations, makes plain the Second Motion to Dismiss is due to be granted.

    2.    <u>Alleged Causes of Action</u>

        a.    **Count III - § 3729(a)(1)(A) against BJCTA, Murdock, Gordon and Skye Connect**

Section 3729(a)(1)(A) of the FCA imposes liability where a party "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  The Relators included in Doc 1, pp. 34-5, ¶¶ 196-203 assertions that merely, and/or in a conclusory fashion,

repeat the elements of a violation of § 3729(a)(1)(A).  This is legally insufficient.  *See Twombley*, 550 U.S. at 556, and *supra*, p. 3.  Beyond the factual allegations in ¶¶ 133-147, no further attempt to meet the requirements under Rules 8(a)(2) and 9(b), Fed. R. Civ. P. was made by Relators in the remainder of the Complaint.

In Count III, the Realtors specifically point to the allegations in ¶¶ 133-147 ( the only prior allegations including Gordon and Skye Connect) as the basis for the legal claims they attempt to bring. *E.g.,* "[A]s set forth above, . . ." (¶ 198); "[I]n performing all of the acts described herein . . ."; [I]n carrying out these wrongful acts . . . ." (¶ 200).  The one element that was new to the factual allegations section was the reference in ¶¶ 201-203 to damages to the United States by virtue of its payment of money it would not have paid.  These conclusory allegations are not entitled to be accepted as true. *See Iqbal*, 556 U.S. at 663 refusing to credit "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."

There is no allegation that Gordon and/or Skye Connect "knowingly" took any action at all, yet Count III refers to wrongful actions, *e.g.,* "false and fraudulent claims" (¶¶ 198, 199, 200, 203), "pattern of fraudulent conduct," (¶ 201), "false or fraudulent and illegal actions and pattern of fraudulent conduct," (¶ 201).  These allegations are not associated with any supportive factual claims. Accordingly, they amount to the very type of conclusory statements, lacking "indicia of reliability" from supporting factual allegations, that require a motion to dismiss be granted.  *See Chase,* No. 16-16670 at * 11(a complaint without specific examples of conduct, no basis for knowledge of wrongful conduct, and failure to describe a specific fraudulent claim that was submitted, warranted dismissal).  Generally speaking, "the submission of a false claim is 'the sine qua non of a False Claims Act violation.'" *Id.* at No. 16-16670 *9 quoting *Clausen*, 290 F. 3d at 1311.

Count III makes allegations against four Defendants, but does not contain an allegation about even one meeting, or reference to any agreement, or overt act taken in furtherance of a violation of any statute, or regulation.  Accordingly, no claim, including one for conspiracy, has been stated and the Second Motion to Dismiss should be granted.

While the Relators may seek to amend the Complaint, this would be futile. *See Corsello*, 428 F. 3d 1014 (district court need not allow amendment when it would be futile).  There are no discrete allegations of wrongdoing that need to be expounded upon, nor actual knowledge to fill in where there is a lack of materiality in the allegations that were made.  The tenor of the claims arises against BJCTA, and the effort to attach some claim to Gordon and Skye Connect, merely because of their business interactions, must fail.  This proposition was shown to be true when the Relators filed an Amended Complaint, after the Motion to Dismiss (Doc 26) by these Defendants had been filed, and failed to include any additional fact or allegation to shore up their claims. They did not do this because they cannot – and there is no conceivable set of facts that could convert the threadbare allegations of fact into actionable wrongs under the FCA.

> b. **Count IV - § 3729(a)(1)(B) Against BJCTA, Murdock, Skye Connect and Gordon**

The focus of the wrong in Count IV is found in ¶ 206 alleging for the first time that BJCTA, Murdock, Gordon and Skye Connect, presumptively jointly, "made false statements and false certifications including, but not limited to, false statements and certifications regarding Defendants['] adherence to competitive bidding and proper oversight and management of federal funds in order to obtain federal grants and funding with full knowledge that these false statements and certifications would be material to the United States' decision to pay[.]"  It appears the assumed basis for this allegation stems from the general references to the Federal Transportation Administration ("FTA") regulations made in Doc 28, ¶¶ 21-25, p. 5. However,

there is no articulation of any duty Gordon and Skye Connect owed to the Government, or others under a contract or regulation for which they failed to comply in any material respect.  Taken on its face, the allegation does not state to whom a false certification was made, by whom, when, how or for what purpose.  *See Corsello,* 428 F. 3d 1014.   Moreover, the materiality requirements, explained in *Escobar,* have not been met by the disconnected and specious allegations so that no effective claim for false certification has been stated. Accordingly, the Second Motion to Dismiss is due to be granted.

        c.      **Count VI - § 3729(a)(1)(G) against BJCTA, Strada,
                    Skye Connect, Murdock, Watters, and Gordon**

Section 3729(a)(1)(G) imposes liability where a party "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  For the first time in the Complaint, all Defendants are alleged in Count VI (Doc 28, p. 40) to have taken the same action(s), presumptively jointly, although there was not even one factual allegation that all had ever taken any concerted action, including meeting together, or that any named contractor owed any money by way of a refund to the Government.  The conclusory allegations, about false certifications and records, in Count VI lack any "indicia of reliability" for the following reasons:

(i)      They do not identify a particular Defendant in a specified transaction where a certification was explicitly, or implicitly falsely certified;

(ii)     Count VI lacks underlying factual allegations that support a claim of false certification;

(iii)     There are no allegations which demonstrate the job duties of the Relators which could demonstrate the reliability of their assertions;

(iv)     The allegations do not meet the requirement of pleading with particularity under Rule 9(b);

(v)     The allegations do not state a claim under the FCA against Gordon and Skye Connect.

The allegations in Count VI, as in Count III and IV, attempt to suggest enough recitations of "fraudulent"[13] so that the Relators can conduct discovery to try and come up with some unexpected facts to cobble together a claim.  Such a result would defy the careful analysis and resultant action the Supreme Court requires. *See generally Escobar*, 136 S. Ct. at 2004 ("We emphasize, however, that the False Claims Act is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations.")[14]

Paragraph 218, p. 41 for the first time in the Amended Complaint alleges an apparent conspiracy of all Defendants by "knowingly concealing and improperly avoiding or decreasing its obligation to pay or return funds to the Government, . . ." as an offense under the FCA.  There are no facts alleged or associated with this rote assertion that merely tracks some of the elements of the FCA.  These allegations lack the materiality and "indicia of reliability" the Eleventh Circuit requires and the Amended Motion to Dismiss should be granted.  *See Marsteller,* 880 F. 3d at 1313, *Chase*, No. 16-16670 *10.  The elements of a conspiracy or other joint action are not

---

[13] "And the term 'fraudulent' is a paradigmatic example of a statutory term that incorporates the common-law meaning of fraud." *Escobar*, 136 S. Ct at 1999 citing and quoting: "*Nader v. United States,* 527 U.S. 1, 22, 119 S. Ct 1827, 144 L. Ed. 2d 35 (1999)(the term "actionable 'fraud'" is one with a "well-settled meaning at common law.")"

[14] The *Escobar* Court returned the case to the district court to determine if the Complaint sufficiently stated a cause of action under the FCA where un-credentialed  medical providers submitted claims for payment of medical services from Medicaid.  The Relator claimed the failure to disclose their status was an impliedly false certification to the Government violating § 3729(a)(1)(G). *Id.* at 2004.

alleged, so these Defendants have not been provided sufficient notice of the claims against them to meet the requisites of  Rule 8(a)(2), Fed. R. Civ. P., or Due Process.

### d.       Count VII - § 3729(a)(1)(C) against BJCTA, Murdock, Strada, Skye Connect, Watters and Gordon

Section 3729(a)(1)(C) imposes liability upon a party who "conspires to commit a violation of subparagraph (A), (B),(C),(D),(E),(F) or (G)."  The allegation in Doc 28, p. 42-3, ¶ 222 reads: "Defendants BJCTA, Strada, Skye Connect, Murdock, Watters and Gordon conspired with one another to commit the violations of the False Claims Act 31 U.S.C. §3729(a), described above in Counts I-IV respectively."   However, the Relators "realleged all prior paragraphs as though fully set out herein" in ¶ 221 so all factual allegations in ¶¶ 133-147 are presumed to be included.  Even so, there is no factual support for the allegations, including claims of conspiracy, against Defendants Gordon and Skye Connect in Count VII.  Once again, the Complaint does not contain a description of any fraudulent acts, does not identify an agreement, beyond merely saying the Defendants "conspired with one another" (Doc 28, p. 42-3, ¶222), does not allege any particulars of any so-called fraudulent action, identify any false submission, or incredibly, state when and why the Defendants met, and what acts they took to further a conspiracy to jointly defraud the Government. As a matter of law there are no plausible claims stated under Rule 8(a)(2) or 9(b) and the Complaint is due to be dismissed.

Additionally, Relators have not provided any facts addressing either of the two basic elements necessary for any conspiracy claim to survive the Motion to Dismiss: "(1) an unlawful agreement between the defendants to commit a violation of §3729(a)(1) [and] (2) an act performed in furtherance of the agreement. . . .". *Chase*, No. 16-16670 at \*13.  The panel upheld the district court's dismissal of the conspiracy count in *Chase* stating: "[T]he complaint fails to

identify the people from any of the Referral Defendants involved in the agreement or any specific facts that show an agreement to violate the False Claims Act." *Id.* at 14 *comparing* "*Corsello*, 428 F. 3d at 1014 (dismissing conspiracy claim where the 'bare legal conclusion' that defendants 'conspired to defraud the Government' was not supported by specific factual allegations that they had entered an agreement), *with  U.S. ex rel. Grubbs v. Kanneganti*, 565 F. 3d 180, 193-94 (5th Cir. 2009)(relying on 'specific language' between two named coconspirators made during a particular meeting where the relator was present to conclude that the plaintiff had sufficiently alleged an unlawful agreement.")

The Relators have brought an Amended Complaint under the FCA – a very serious charge – without including the basic information a defendant must have to know what action was taken that violated the FCA.  The "overview" of the FCA violations at Doc 28, ¶¶ 26-32, pp. 5-6 is aimed at the BJCTA. Those allegations suggest there were "schemes" to scam the U.S. Government through the Federal Transportation Administration.  The substantial number of paragraphs that follow do not define the "schemes," nor show how, when, or to whom these Defendants made a false certification, record, or pressed and accepted payment to which they were not entitled.  Relators had the burden to tell all that they know about any wrongdoing, at least to the extent necessary to identify an action with a violation.  It is plain, with an Amended Complaint (Doc 28) now filed, they have told all they know and their claims are not plausible, and not specific enough to lawfully invoke the FCA, or provide these Defendants with notice sufficient under Rule 8(a)(2), Fed. R. Civ. P., or the Due Process Clause of the Fifth Amendment.

III.    CONCLUSION

The FCA is a powerful statute by design to address corruption not mere incompetence. The statute requires specificity from reliable reporters who were in a position to know or observe the wrong which they proclaim.  Relators should not be allowed to paste hollow allegations on a page and gain access to extensive discovery in order to try and fill in what they did not or could not know, at the great expense and likely business loss of any defendant. The Relators' loose and uninformed allegations do not make the appropriate factual connections to be plausible, nor provide the level of detail to be reliable, and in fact and law contain no viable claims of a violation of the FCA, so dismissal of Gordon and Skye Connect is warranted.  Moreover, Gordon, who is not alleged to have contracted with the BJCTA, and is alleged to be the CEO, or "Principal," of Skye Connect, is due to be dismissed forthwith.

Respectfully submitted this 20th day of May, 2019.

*/s/ Marion F. Walker*
Marion F. Walker
ASB-0734-L73M
MFWALKER LAW GROUP, LLC
2323 2nd Avenue North
Birmingham, AL 35203
Tel:  205-327-8354
Fax:  205-718-7607
*mfw@mfwalkerlawgroup.com*

*Attorneys for Skye Connect, Inc. and Alice Gordon*

## REQUIRED CERTIFICATION

I hereby certify, as an officer of the court, that I have affirmatively and diligently sought to submit to the Court only those factual allegations and arguments that are material to the issues to be resolved in Defendants Alice Gordon and Skye Connect, Inc.'s Motion to Dismiss Plaintiff-Relators'

First Amended *Qui Tam* Complaint, and that careful consideration has been given to the contents of this brief to ensure that it does not include vague language or overly broad citations of evidence or misstatements of the law, and that all submissions are non-frivolous in nature.

                    **/s/Marion F. Walker**
                    Of Counsel

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2019, a true and correct copy of the foregoing Brief in Support of Motion to Dismiss was filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following counsel of record:

> **Larry A. Golston, Jr.**
> **Leon Hampton**
> Beasley, Allen, Crow, Methvin
> Portis & Miles, P.C.
> P.O. Box 4160
> Montgomery, Alabama 36103-4160
>
> **Sidney Jackson**
> **Samuel Fisher**
> Wiggins, Childs, Pantanzis,
> Fisher & Goldfarb, P.C.
> 301 19th Street North
> Birmingham, Alabama 35203
>
> Don **B. Long, III**
> Assistant United States Attorney
> **Margaret Lester Marshall**
> Assistant United States Attorney
> United States Attorney's Office – NDAL
> 1801 4th Avenue North
> Birmingham, Alabama 35203
>
> **Daniel J. Martin**
> Jones Walker, LLP.
> 420 20th Street North, Suite 1100

Birmingham, Alabama 35203

**Michael K. K. Choy**
**Robert Rutherford**
**Ellen T. Mathews**
**E. Travis Ramey**
Burr & Forman, LLP.
420 20th Street, Suite 3400
Birmingham, Alabama 35203

/s/*Marion F. Walker*
Of Counsel